CASE No. 890.

ALLEN v. ALLEN.

1. No appeal lies to this court from a refusal by the Circuit judge to dismiss an appeal from the Court of Probate, where the motion to dismiss was based upon the ground that notice of appeal had not been served in proper time upon all the parties to the cause.
2. Where a parent advances a portion to a child to whom the parent has given a general pecuniary legacy by his will previously executed, the presumption of law is that the portion advanced was intended as an ademption of the legacy. But no presumption of ademption arises where the bequest is residuary, or in cases of grandchildren or other strangers.
3. General pecuniary legacies to strangers, and a residuary bequest to children or strangers, will be adeemed by subsequently advanced portions, where an intention to adeem is shown to have existed ; and extrinsic evidence may be received to prove such intention.
4. The doctrine of ademption has never been applied to devises of real estate.

5. The doctrine of advancements applies only in cases of intestacy, or where directed in the will.

6. A legatee, upon the receipt of money from testator during his lifetime, executed to the testator and the other legatees a release of all interest in the estate. *Held,* that the release was without consideration and a nullity.

7. Where testator directs the residue of his estate to be converted into money and " equally distributed among his heirs-at-law, share and share alike," *held,* that the distribution must be *per capita* and not *per stirpes.*

---

Before FRASER, J., Abbeville, April, 1879.

Petition filed in the Court of Probate for Abbeville county, by Charles P. Allen, as executor of the will of Bannister Allen, deceased, praying a construction of the will, and of other matters connected with the administration. Upon the hearing the judge of Probate rendered his decree, from which notices of appeal to the Circuit Court were given by several of the parties in interest. Notices of appeal, taken by plaintiff and some of the defendants, appear not to have been served upon three other of the defendants; and these last made their motion before his Honor, Judge Hudson, holding court at Abbeville, in September, 1878, to dismiss the other appeals, because of failure on their part to serve the moving defendants with a copy of their grounds and notice of appeal twelve days before the time when the appeal was to be entered in the Circuit Court. Judge Hudson simply ordered " that the motion to dismiss the appeals be denied."

All other matters necessary to a full understanding of the decision of this court are stated in the Circuit decree of Judge Fraser, which is as follows:

This case was heard by me on appeal from the judge of Probate at the term of the Court of Common Pleas held for Abbeville county in February, 1879.

It appears that Bannister Allen, late of said state and county, departed this life on September 4th, 1876, leaving in force a will executed by him on December 8th, 1871, of which Charles P. Allen, the petitioner, is sole qualified executor. Testator left considerable estate, real and personal, and as his heirs-at-law, a widow, and a number of children and grandchildren, all of

2 K

whom are parties to this proceeding, and who are all beneficiaries under said will. The pleadings in the case contain a full statement of undisputed facts and a copy of the will and are referred to when necessary for explanation of the statements herein contained. Between the date of the will and the death of the testator, there were various money transactions between the testator and his children and grandchildren, out of which have grown the conflicting claims of the parties now before the court for adjudication. These transactions are substantially as follows :

1. As to Charles P. Allen, son—

The will gives him $1200 in gold.

April 1st, 1874. Charles P. Allen gave testator a paper under seal by which he promised to pay him at one day $1200 in gold, and $1300 in currency, without interest, " *in full for that much.*"

2. As to Byrd O. Allen, son—

The will gives no " special bequest."

July 3d, 1874. Byrd O. Allen gave testator a receipt under seal for $2000 " in full of his distributive share of the estate," and by it renounces and forever relinquishes all claims by inheritance or otherwise to the same.

3. As to James T. Allen, son—

The will gives $1200 in gold.

November 29th, 1875. James T. Allen gave testator a receipt under seal for $3741 " in part payment of his interest" in the estate, and June 20th, 1876, a note under seal for $20 for value received.

4. As to Bannister A. Davis, grandson—

The will gives two tracts of land, in all, three hundred and twenty-three acres, and $1000.

September 12th, 1864. Bannister A. Davis gave testator his note under seal at one day for $100 ; on December 23d, 1872, his note under seal at six months for $1145, for money received ; and May 29th, 1876, his note under seal for $50, for value received, at one day. These notes are all payable to " bearer."

5. As to Ella Lee, granddaughter—

The will gives her $500.

July 4th, 1874. Ella Lee gave testator a receipt under seal, $1010, " in full of her distributive share " in his estate, and thereby renounces and forever relinquishes all claim by inheritance or otherwise to her part of his estate.

6. As to James B. Allen, son—

The will gives him $500.

October 15th, 1875. Joseph N. Brown, as guardian, received for him, from testator, a note on Stephen McCully, amounting with interest to the sum of $1313.85, and $15 in currency, on this testator endorsed and signed of same, " receipt against my grandson, James Bannister Allen, in full against my estate."

7. As to Indiana Barksdale, daughter—

The will gave her no special bequest.

September 7th, 1870. Indiana Barksdale gave to testator a paper under seal, acknowledging the receipt of $2000 in full of her distributive share of his estate, and thereby renounced and relinquished to the other heirs-at-law, devisees and legatees when their rights shall accrue, all claim by inheritance or otherwise to any part of the estate, and binds herself, her heirs, executors and administrators to the fulfillment thereof, in consideration of the said $2000. Also Indiana Barksdale gave testator, April 8th, 1869, and before the date of the will, a receipt under seal for $525, except four slaves, to stand good against her in the estate.

8. As to Charlotte Ann (Allen) Orr, granddaughter and John Earle Bannister Allen, grandson—

The will gives to each the sum of $500.

October 6th, 1874. John B. Moore, as their guardian, gave testator a receipt for $1000 each, to be managed and accounted for by him as guardian ; also without date, and, I suppose, after coming of age, they gave a receipt jointly for $2000 in full of their distributive share and thereby renounced and forever relinquished all claim by inheritance or otherwise to the estate. On December 10th, 1875, Pet Allen Orr gave testator a receipt under seal for $1100 in full of her distributive share of his estate, and thereby renounces and forever relinquishes to the other heirs-at-law, devisees and legatees when their rights

shall accrue all claim by inheritance or otherwiseto her part of the estate and binds her heirs, executors and administrators for the complete fulfillment of the above in consideration the said sum of $1100.

And John E. Allen, September 23d, 1875, gave a receipt to his grandfather (the testator) for $1000 in full of all demands against his estate.

Alethia Allen, Charlotte Ann (Allen) Orr and Pet Allen are assumed to be the same person, and John Allen, John E. B. Allen and John E. Allen also the same person.

9. As to B. Bollin Allen, son—

The will gives him a tract of four hundred and fifty acres of land, one mule, and $1200 in gold.

April 1st, 1874, B. Bollin Allen gave to testator a paper under seal, by which he promised to pay testator one day after date $1200 in gold, included in the will, and $1300 in currency, in full for that much, without interest.

10. As to B. Berrien Allen, son—

The will gives him land known as the Carother's and Mecklin's tracts, a horse, one mule and $1200 in gold.

April 1st, 1874, B. Berrien Allen gave testator a paper under seal, by which he promised to pay testator one day after date $1200 in gold, included in the will, and $1300 in currency, in full for that much without interest.

Also note without date, payable three years after date, for $700, for improvements on the "Home Place," including dwelling, gin-house and other buildings, with the land belonging to them, without interest.

11. As to Mary A. McCalla, daughter—

The will gives the "Harkness Place," containing two hundred and twenty-five acres, and $1200 in gold.

March 18th, 1876, Mary A. McCalla gave testator a receipt for $3800, in part payment of her interest in the estate, and in consideration thereof she relinquishes her interest in the "Harkness Place," given to her in the will.

12. As to Elizabeth or Lizzie Watson, daughter—

The will gives her a remainder, after the death of the widow,

in the " Home Place," a tract of land described in the will, and the sum of $1200 in gold.

April 24th, 1876, Lizzie Watson gave to testator a certificate, under seal, that she that day received of him $200, making in all $4000, given by him for the " Home Place," willed to her by him.

February 25th, 1876, she gave a certificate that in consideration of $3800, she relinquished all claims given and bequeathed to her by her father in his will; that being for part of the land, " Home Place," willed to her, &c.

February 16th, 1876, she gave him a paper under seal, by which she relinquished all claim to the " Home Place," no consideration being stated.

13. As to James A. Moragne, grandson; Mary Brady, granddaughter; Alice Brady, granddaughter—

The will gives them a judgment against their father, P. B. Moragne, and contains no estimate of its value. The testator gave them nothing after the execution of the will, so far as appears to the court.

14. As to Ann Elizabeth Allen, the widow—

The will gives her the " Home Place" and valuable personal property, consisting of furniture, plantation tools, implements, stock, provisions, &c., for life, with remainder as to the " Home Place" to Elizabeth S. or Lizzie Watson, and as to the personalty to the four younger children, Bannister Bollin, Basil Berrien, Mary A. and Elizabeth S., share and share alike. Also, the will gives her $500 in gold absolutely, and directs that the provision made in the will shall be in bar of dower.

It is alleged, and not denied, that a settlement has been made with the widow by the executor and no question has been raised as to its correctness.

The will contains a residuary clause in the following words, to wit:

" It is my will, and I hereby direct that all my estate not hereinbefore disposed of be converted into money by the sale of the real and personal property and by the collection of the debts due to me, as far as possible, and that the proceeds be equally distributed among my heirs-at-law, share and share alike."

Upon the hearing before the judge of Probate, it was held:

1. That the division of the residuum under this clause should be made " per capita."

2. That whenever the amounts advanced " as shown by the receipts and notes be equal to or greater than the specific legacies, the latter will be wholly adeemed, and in cases where they are greater, the excess shall be thrown into the residuum of the estate and considered as an advancement, the parties accounting for the same in the distribution.

3. " That the relinquishments are not renunciations of the whole interest of the parties who executed the same, but shall stand upon the same footing as the notes and receipts, adeeming the specific legacies when equal to them, and the excess, if any, to be an increase of the residuum of the estate; the parties accounting for the same as advancements in the distribution of the residue of testator's estate, and, when the amounts so advanced do not equal the specific legacies, then the ademption will be only *pro tanto* in the case of all payments."

This decree was made in order to settle the principles upon which the estate is to be divided preparatory to an accounting, which the executor is prepared to make, having a large portion of the funds in bank. The exceptions put in issue every point decided by the judge of Probate and opens the whole case, for adjudication in this court.

Whenever property, by the terms of the instrument by which it is conveyed, is given to a class of persons as children or grandchildren, the distribution is to be made *per capita* and not *per stirpes*, but when the court is compelled to resort to the statute of distributions by the terms of the will or deed, for the purpose of ascertaining the objects of the gift, resort must also be had to the statute to ascertain the proportions in which the donees take unless the terms of the instrument itself indicate an intention on the part of the donor that a different rule of distribution shall be pursued. In the case before the court, the testator, in reference to the residuum of his estate, directs that it " shall be equally distributed among my heirs-at-law, share and share alike." The widow, children and grandchildren are the heirs-at-law, and the intention of testator cannot be more clearly

·expressed that the distribution shall be *per capita*. The law has provided two modes by which the estates of decedents may be ·distributed.

1. By the statute of distributions, when all advancements are to be brought into the distribution and accounted for.

2. By the will of the decedent, when no advancements are to be accounted for otherwise than are directed by the will itself, executed in the presence of three witnesses and with other formalities provided by law. The only exceptions are in cases of parent and child, there is a presumption against double portions, and in other cases "if it appears in any legal manner it ·was the intention of the testator to have the legacy adeemed."

. Devises of real estate cannot be adeemed by transactions in the lifetime of testator.

An interest in the residuum of an estate cannot be ·adeemed, on account of the uncertainty of the amount, by any payments in the lifetime of testator.

Wherever the legatee is the child of the testator, the law raises ·a presumption that the legacy was intended to be adeemed by the advancements, and if not in full then *pro tanto*, no difference of purpose in the object of the gift appearing on the will and the receipts given. 1 *Roper on Leg.* 409 ; 11 *Redf. on Wills* 545.

Whereas in this case, the parties sustain the relation of strangers (grandchildren) to the testator, it is held, with some hesitation, that as the papers, signed by the legatees as receipts and kept by the testator, refer the payments to the legacies, there was the same purpose in both and an *intention* to *adeem*, and that the legacies are adeemed. In all cases where the parties, in papers found in testator's possession and set out in the proceedings, promise to pay money to the testator, the same constitute a portion of the estate, and do not adeem the legacies or devises of land ; and these promises to pay must be estimated as a part of the estate and adjusted by payments, as· the balance may be. *Cruise's Dig.* 74, (Lord C. B. Gilbert) ; *Ross on Com. Law* 302.·

" A release of a man's right supposeth that he has a right ; for he ·cannot transfer a right which he has not; if he has nothing, nothing can pass by the conveyance, &c. Hence a son cannot release to his father's disseizor in the lifetime of the father, be-

cause he has no right in the land then. And in such case the son might enter on the land against his own release."

Neither the children or grandchildren of testator had any rights in the estate until the death; and at the time the releases to testator were given there was no right upon which it could operate. It is true that where there is a warrant of title this would operate as an estoppel and prevent the warrantor from claiming. In all the cases where there is a simple release there is no warranty, and no title passed.

In the case of Indiana Barksdale and several others, there is a release to "the other heirs-at-law, devisees and legatees" of testator, "when their rights accrue," of "all claim by inheritance or otherwise," in the estate. If a conveyance of an interest in the estate of a living man to another person, with warranty, as in this case, binding "the warrantor, his heirs, executors and administrators for its fulfillment," can, as a matter of public policy, be sustained, there is an objection to them in this case, because of the uncertainty and confusion of the individuals to whom the release is made.

If the conveyance or release is to inure to the benefit of the heirs-at-law, then the widow will take one-third, and the children, grandchildren, will take *per stirpes,* on the principle laid down in Templeton & Walker, and if it is to inure to the benefit of the legatees, they would take *per capita ;* thus, in different aspects, the same persons would take in different proportions. The uncertainty and confusion would be still more apparent if the testator had gone outside of his heirs for his legatees and devisees. I conclude that *all the releases are void* and can have no effect as such, while the evident purpose apparent on their face will give them *effect to adeem the legacies,* not including, however, the interest in the residuum or operating to adeem the devises of real estate or legacies of chattels.

The statement was omitted at the proper time that the endorsement of testator on the letter of Joseph N. Brown shows his intention to adeem the legacy of $500 to James B. Allen, and the gift of note for the payment of money is sufficiently "*ejusdem generis*" to make it a case of ademption.

It may be that the note of B. Berrien Allen for $700 has been paid or otherwise discharged by the use of the money for testator's benefit, and testimony may be introduced to show this.

If it is claimed that the same amount of money paid by the testator by way of advancement is covered by more than one of the papers in *Exhibit F* or *Exhibit H*, testimony may be introduced to show it in order to prevent a double charge for the same sum.

It has not been deemed necessary to consider whether the legacies which are the subject of this litigation are specific or general, as the same rule will apply to all except the residuary legacies.

The questions raised in this case are very interesting, and the conclusions have been reached with many misgivings as to their correctness. And it is feared that the very unusual condition in which this estate is found, will work more or less hardships under any judgment either of this or the Supreme Court.

It is therefore ordered and adjudged that so much of the decree of the judge of Probate as holds that the distribution of the residue shall be *per capita*, be sustained, and that the balance of the decree be overruled, and that the case be remanded to the Court of Probate to be settled according to the principles herein announced.

That so far as money has been advanced by the testator on promises to pay money, the same shall be accounted for as a part of the estate and the legacies are not adeemed thereby.

That so far as money has been advanced by the testator on receipt of his children and grandchildren, or their guardians, the same shall be considered as ademptions *pro tanto* of the general or pecuniary legacies, called specific in the decree of the Probate judge, any surplus over such legacies not to be accounted for.

That so far as these receipts contain releases to the testator, or general releases, or to the heirs-at-law, devisees or legatees, of interest in the estate, the same shall be held to be void and of no effect.

That legacies of chattels, and devises of land shall be held as unaffected in any way by transactions in the lifetime of testator.

That the residuum of the estate be unaffected by these trans-actions in the lifetime, and shall be divided between the widow, children and grandchildren named in the will *per capita*.

That testimony may be introduced in the cases and for the purposes above indicated.

From this decree appeals were taken by several of the parties in interest, upon the grounds considered in the opinion of the court.

*Mr. J. S. Cothran*, for appellants.

The term "heirs" is used by the testator to denote succession or substitution, and must be taken in the sense of a legacy to A and his heirs, meaning such person or persons as would legally succeed to the property according to its nature and quality. 2 *Wms. on Ex'rs* (*3d Am. ed.*) 950.

The terms "heirs" is distinguished from *descendants, issue, family, relations*, and if either of these latter terms had been used by the testator, instead of the former, with the qualifying words, "*equally*" and "*share and share alike*," it is admitted that unless the testator's intention otherwise appear from other expressions of the will, the distribution would be *per capita*, not *per stirpes*. *Cas. Temp. Tal.* 257; 3 *Bro. C. C.* 367; 3 *Beav.* 541. But see even where these terms are used and a contrary intent appears, the distribution was *per stirpes*. 4 *Beav.* 239; 1 *Coll.* 6; 2 *Cox* 187. The qualifying words, "*equally*" and "*share and share alike*," are not inconsistent with distribution *per stirpes*.

If the grandchildren, as heirs, take by purchase under the sixth clause of the will, which we do not admit, but maintain that they take under the act of 1791, and by succession or sub-stitution, they must take *per stirpes*.       *   *   *   3 *Rich. Eq.* 552; *Ib.* 556.

Grandchildren being two degrees removed, have no natural right to any part of the inheritance. They come in *ex gratia*, are *haeredes facti*, under Section 3 of the statutes of distributions, which determines at once who shall be heirs and distributees; and it is a logical consequence that the statute must be resorted to in order to ascertain their shares in the subject of the gift.

*In strictissimi jure*, they are not heirs-at-law, but lineal de-

scendants, with rights secured to them, as a class, under Section 3 of the statute of distributions. Nor are they next of kin— next of kin are *nearest* of kin, and children are nearer than grandchildren. See *Roper on Leg., tit. " Next of Kin."* It has been declared to be a rule of the affections that children are preferred to grandchildren, and nearer kindred to the more remote. 1 *Rich. Eq.* 141 ; 2 *Jarm. on Wills* 46 ; 5 *Rich. Eq.* 29.

In *Evins* v. *Godbold,* 6 *Rich. Eq.* 26, much relied on by some of the counsel in the cause at bar, the effort on the part of the grandchildren of the testator was to obtain the share of their deceased mother, which was denied to them on the Circuit, and this was all that they asked for. It was a devise upon the contingency of the mother's surviving the life tenant.

The releases made and given to the testator in his lifetime by the several legatees who executed the same, being for valuable consideration, are valid and effective. 2 *Strange* 497 ; 1 *P. Wms.* 64; 1 *Id. 639* ; 2 *Id.* 273. *Sed secus,* if a mere voluntary release. 1 *P. Wms.* 399 ; 10 *S. C.* 354.

The principle of advancements cannot arise in cases of testacy, and, consequently, has no application here. *Bail. Eq.* 154 ; 1 *Hill's Ch.* 10.

The residuum of the estate is unaffected by any payments or advances of money by the testator in his lifetime ; ademption of this is impossible. 2 *Wms. on Ex'rs* 1144 ; 1 *Roper on Leg.* 263.

*Messrs. S. McGowan, M. P. De Bruhl* and *E. B. Gary,* contra.

July 13th, 1880. The opinion of the court was delivered by

McIVER, A. J. A preliminary question has been raised in this case as to whether due notice of appeal was given by some of the parties from the decree of the judge of Probate, which must first be disposed of. The order of Judge Hudson, refusing to dismiss the appeal of certain of the parties, upon the ground stated, is not appealable (*Henderson* v. *Wyatt,* 8 *S. C.* 112,) but even if it were, we should be inclined to agree with him in the view which he seems to have taken, and we will therefore proceed to consider the case upon its merits.

Most of the questions raised are novel, at least in this state,

and not free from difficulty. The case has, therefore, demanded and has received the most thorough consideration and careful attention.

The object of the action, which was instituted by Charles P. Allen, as executor of the last will and testament of Bannister Allen, against his devisees and legatees, was to obtain the instructions of the court as to the proper mode of distributing the estate under the provisions of the will. Except as to the residuary clause, no question has been raised, and no difficulty is perceived in ascertaining the construction which should be placed upon the terms of the will, but the conflicting claims which the court is called upon to determine arises mainly out of various money transactions between the testator and his devisees and legatees during his lifetime. For a detailed account of these transactions reference must be had to the brief and to the decree of Judge Fraser, who heard the case on its merits, where they are very clearly and succinctly stated. In general terms these transactions may be classified as follows: 1st. Payments of money by the testator to the legatees, evidenced by simple receipts. 2d. Payments evidenced by receipts which are expressed to be in full or in part, of distributive shares of testator's estate. 3d. Ordinary notes given by several of the legatees to the testator. 4th. Papers in the form of notes under seal, by which the legatee promises to pay to the testator, one day after date, "twelve hundred dollars in gold, included in the will paid, and thirteen hundred dollars in currency, in full for that much, without interest," upon each of which is the following endorsement by the testator: "I give of the within note to my son [naming him] in part of my estate of the late will and testament, and dated 8th December, 1871." 5th. Papers in which the legatee signing acknowledges the receipt of a specified sum of money from the testator, "in full of my distributive share of the estate of my said father, and I hereby renounce and forever relinquish to the other heirs-at-law, devisees and legatees of Bannister Allen, my father, when their rights shall accrue, all claim, by inheritance or otherwise, to any part of said estate, and I bind myself, my heirs, executors and administrators, for the complete fulfillment of the above, in consideration of said sum of two thousand

·dollars received by me ; " the only difference in the papers belong-
ing to this class being that in some of them the interest is not .
relinquished " to the other heirs," &c., as in the one above set
·out, but contain a simple relinquishment of " all claims, by in-
heritance or otherwise, to any part of said estate." 6th. Papers
in which Mrs. Watson and Mrs. McCalla acknowledge the re-
ceipt of certain sums of money from the testator, in considera-
tion whereof they renounce all claim to the lands devised to them
by the testator.

The questions are : Whether these transactions shall operate as
ademptions of the legacies given in the will. If so, whether
they adeem only the pecuniary legacies of specific amounts, or
the interest which each of the legatees may be entitled to under
the residuary clause also. What effect the papers purporting to
release the interests of several of the legatees shall have, and
what effect the papers executed by Mrs. Watson and Mrs.
McCalla shall have.

The general rule upon the subject of the ademption of legacies
is that where a father or one who has placed himself *in loco
parentis* gives a legacy to a child, or to one toward whom he has
assumed such a relationship, he is understood to give a portion,
and, in consequence of the leaning of the courts against double
portions, if the parent afterward advances a portion to such child,
the presumption is that it was intended as a satisfaction of the
legacy, either in whole or in part, as the case may be, and the
legacy is adeemed *pro tanto.* But in case of a legacy to a
stranger, (and in this respect even grandchildren are regarded as
strangers,) no such presumption arises, and unless there is proof
showing that the subsequent advance was intended as a satisfac-
tion of the legacy there will be no ademption and the legatee will
be entitled to both. *Ex parte Pye,* 18 *Ves.* 140 ; *Richardson* v.
*Richardson, Dud. Eq.* 184. The question of ademption is a
·question of intention ; as is well said in one of the cases, " inten-
tion is of the very essence of ademption." Thus, where the
legacy is from a parent to a child, or from one who has assumed
that relationship to the legatee, the intention to adeem is pre-
sumed merely from the relationship, and in the absence of any
·evidence to the contrary, such presumption is conclusive of the

intention. But where no such relationship exists, then no such presumption arises, and the intention becomes a matter of proof, for which purpose extrinsic evidence may be resorted to, not for the purpose of showing an intention to revoke or alter any portion of the will, but, as is fully shown in the cases, for the purpose of showing what was the intention of the testator in making the subsequent advance or payment—whether he intended it to operate as a satisfaction of the legacy or as an additional bounty to the legatee. *Shudal* v. *Jekyll,* 2 *Atk.* 516 ; *Rosewell* v. *Bennet,* 3 *Atk.* 77 ; *Kirk* v. *Eddowes,* 3 *Hare* 509 ; *Richards* v. *Humphreys,* 15 *Pick.* 133 ; *Gilliam* v. *Chancellor,* 43 *Miss.* 437, reported also in 5 *Am. Rep.* 498. The case of Richards *v.* Humphreys was, in some of its aspects, very much like the case now under consideration, and will be found full and instructive. In that case a brother, by his will, gave a legacy of $500 to his sister, who was a married woman, and afterward, at her request, advanced her something over $400 to aid her in the purchase of land, taking a receipt therefor, in which it was stated " that the money was given in part payment of the dowry given her in his will." The court held that this showed that the payment was made on account of the legacy, and that it was, therefore, adeemed to the extent of the amount paid. In that case the court used this language : " Ademption takes effect not from the act of the legatee in releasing or receiving satisfaction of the legacy, but solely from the will and act of the testator in making such payment or satisfaction or substituting a different act of bounty, which is shown by competent proof to be intended as such payment, satisfaction or substitute." Hence it makes no difference that the legatee was, at the time of receiving the payment, under the disability of coverture or infancy, as the ademption depends solely upon the will of the testator and not upon the ability of the legatee to give a valid discharge. It is very true that it has been held that no *presumption* of an intention to adeem arises where the bequest is of a residuum or of an interest therein, even where the bequest is from a person standing in the relation of parent to the legatee, and this because a residuum or an interest therein can never be regarded as a portion, strictly speaking, inasmuch as the amount is necesssrily

of an uncertain character, and hence the *presumption* against double portions does not arise. *Farnham* v. *Phillips*, 2 *Atk.* 215 ; *Freemantle* v. *Banks*, 5 *Ves.* 85. But if, as we have seen, the question of ademption is a question of intention, we are unable to perceive any good reason why, where the proof shows an intention to adeem, not only a pecuniary legacy, but also an interest in the residue, such intention should not be allowed full effect. We have not been able to find any case in which an interest in the residue has been held to be adeemed by a subsequent advance, but we do find that in the case of *Lady Thynne* v. *Earl of Glengall*, 2 *H. L. Cas.* 131, upon a full review of the authorities, it was held that a bequest of a residue will, according to its amount, be a satisfaction of a portion, either in full or *pro tanto*, as the case may be, and it is difficult to understand how, upon the same principle, we can avoid holding that a portion by settlement or otherwise, shall, in like manner, be a satisfaction of a previous bequest of a residue to the extent that the former may cover the latter. We think, therefore, that where the evidence shows such to be the intention, an interest in the residue, as well as a general pecuniary legacy, may be adeemed by a subsequent advance of money to the legatee.

It would seem that, upon the same principles, devises of real estate ought likewise to be adeemed (if such a term can, with any propriety, be applied to devises) by subsequent payments to the devisees with the intention of producing that result ; but it is conceded that the doctrine of ademption has never been applied to devises of real estate, and, in the absence of any authority, we do not feel justified in disregarding the well-established line which has for ages been drawn between real and personal estate, even though we may be thereby compelled to thwart the obvious intention of the testator and disturb that distribution of his property which he thought was proper and just to his descendants. For while the intention of the testator is the cardinal rule of construction of a will, yet such intention cannot be given effect where it is in conflict with the rules of law. A devise of real estate cannot, like a pecuniary legacy, be affected by any subsequent transactions between the testator and the devisee, but must stand until it is revoked or altered in the

manner prescribed by law. The papers signed by Mrs. Watson and Mrs. McCalla cannot, therefore, operate, as they were doubtless intended, as ademptions of the devises to these ladies; they cannot, as we shall presently see, have any effect as releases, and they cannot operate to adeem the interests of these devisees in the residuum, for they were not so intended by the testator, but, on the contrary, are expressly declared to be intended for a different purpose, which, as we have seen, must fail because in conflict with an established rule of law. Nor can they be treated as *advancements*, for the doctrine of advancements applies only in cases of intestacy, or where, as in *Manning* v. *Manning*, 12 *Rich. Eq.* 410, the testator *in his will* has directed that property given to his children in his lifetime should be accounted for by them. Here, however, there is no such direction in the will, and to give the transactions evidenced by these papers the effect of advancements would, in effect, be an alteration of the will without the formalities required by law for such a purpose.

The next inquiry is as to the effect of the receipts in which some of the legatees have undertaken to release their interests in the estate of the testator during his lifetime. We agree with the Circuit judge that so far as they purport to be releases of any interest in the estate they are absolutely void, and it is scarcely necessary to add anything to what he has said upon the subject. It may be true that, in equity, a release of a mere naked possibility or expectancy of an heir to his ancestor's estate, or of a legatee of an interest under the will of a person then living, *if founded upon a valuable consideration*, might be carried into effect after the death of such ancestor or testator as a right acquired under a contract; (2 *Story's Eq. Jur.*, § 1040, *b*,) but, certainly, without such consideration it would be a nullity. *Morris* v. *Borroughs*, 1 *Atk.* 399. In this case it is not pretended that there was any consideration for the so-called releases as between the parties who signed them and the other heirs, devisees and legatees of the testator, and it could not be said that there was any valuable consideration passing between the testator himself and those who undertook to release, for the testator having, up to the time of his death, absolute testamentary power

over all of his property, could, by a simple stroke of his pen, have effected the very same objects by revoking any legacy or devise in his will. Hence these releases are, in our opinion, absolute nullities, as well those which purport to relinquish " to the other heirs," &c., as those which do not purport to relinquish to any particular person or persons, and can only have effect as acknowledgments of the receipt of so much money on account of interests in the estate. The cases which have been cited to sustain the validity of these releases, *Lockyer* v. *Savage*, 2 *Strange* 947 ; *Ives* v. *Metcalf*, 1 *Atk.* 63 ; *Blunden* v. *Barker*, 1 *P. Wms.* 639 ; *Cox* v. *Belitha*, 2 *P. Wms.* 272, and others of that class, prove, on examination, to be cases arising under the custom of London, by which a man's testamentary power did not extend to the whole of his personal estate unless he died leaving neither wife or child. If he left a wife and children, his personal estate was divisible into three equal parts, one of which, called the orphanage part, went to the children, another to the widow, and the third part was at his own disposal. 1 *Wms. on Ex'rs* 2, 3 ; *Heron* v. *Heron*, 2 *Atk.* 160. Inasmuch, therefore, as the father could not, by his will, deprive his child of an equal share in what was called the orphanage part, a release by the child to the parent of his interest in such orphanage part, in consideration of the payment of a sum of money, has been sustained, in the cases above-mentioned, as a transaction based upon a valuable consideration, because there the parent acquired something—the right to dispose of the child's share of the orphanage part—in exchange for the money paid to the child, while here, where there is no such restriction upon the testamentary power, it is very manifest that a parent obtains nothing by such a transaction, and it cannot be supposed that he pays his money in consideration of obtaining a right which he already enjoys.

We conclude, then, that so far as papers of the first class are concerned—ordinary receipts—they will or will not be regarded as ademptions of legacies *pro tanto* accordingly as the evidence adduced may show the intention of the testator; that as to papers in the second class—receipts which are expressed to be in full or in part of distributive shares or interests in the testator's estate—they will, without further evidence, be regarded as

2 L

ademptions of legacies, residuary as well as pecuniary, to the extent of the amounts mentioned therein, as they bear upon their face evidence that such was the intention of the testator; that as to papers in the third class—ordinary notes—they are to be regarded as assets of the testator's estate, to be accounted for by the executor, and not as ademptions of legacies; that as to papers of the fourth class—papers in the form of notes promising to pay $1200 in gold, included in the will, paid, &c.—they are to be regarded as ademptions of legacies, residuary as well as pecuniary, without further evidence, as the terms in which they were written, taken in connection with the endorsements made thereon by the testator, satisfy us that such was his intention; that as to the papers in the fifth class—releases as they are called—they are nullities, except so far as they acknowledge the receipt of specific sums of money, and that they are to be regarded as ademptions of legacies, residuary as well as pecuniary, to the extent of the amounts so specified; and that as to the sixth class—papers signed by Mrs. Watson and Mrs. McCalla—they are to be regarded as nullities. We think, also, that the endorsement made by the testator on the letter of Joseph N. Brown, acknowledging the receipt of a note and a small amount in currency, as guardian of James B. Allen, is sufficient evidence of the intention of the testator to thereby adeem not only the pecuniary legacy to J. B. Allen, but also his interest in the residue *pro tanto,* and that the gift of the note was sufficiently *ejusdem generis* to bring it within the rule as to ademptions of legacies. *Richardson* v. *Richardson, Dud. Eq.* 194–5.

The only remaining inquiry is as to the manner in which the residue of the estate is to be divided—whether *per stirpes* or *per capita.* The language of the residuary clause is as follows: "It is my will, and I hereby direct, that all my estate, not hereinbefore disposed of, be converted into money by the sale of the real and personal property, and by the collection of all the debts due to me, as far as possible, and that the proceeds be equally distributed among my heirs-at-law, share and share alike."

The general rule is, that where there is a gift to a class of persons, without any direction as to the proportions in which the individuals of the class are to take, all who can bring themselves

within the class are entitled to participate in the distribution, which must be *per capita.* But where the gift is to a class, the individuals of which can only be ascertained by a resort to the statute of distributions, then the provisions of the statute must also be resorted to for the purpose of ascertaining the proportions in which the donees are to take, unless, in the instrument by which the gift is made, a different rule of distribution shall be prescribed. *Templeton* v. *Walker,* 3 *Rich. Eq.* 543. If, therefore, the gift is to a class of persons designated as heirs of a particular person, then, as it is necessary to resort to the statute to ascertain who are the individuals composing the class, resort must also be had to the statute to determine how or in what proportions such individuals shall take. This is upon the presumption that the donor having, by implication at least, referred to the statute as to the persons who are to take, also intended that reference should be had to the statute to determine the proportions in which they should take, unless he expresses a different intention. But when he prescribes a different mode of distribution, then no such presumption can arise, and the distribution must be made in the manner prescribed. Thus when, as in *Freeman* v. *Knight,* 2 *Ired. Eq.* 72, the testator directed that certain personal property "should be sold and the proceeds equally divided between my legal heirs," it was held that though a resort to the statute was necessary, in order to ascertain who were the persons embraced in the class to whom the bequest was made, there was no such necessity to refer to the statute to ascertain the mode of distribution, because the testator had himself determined that by directing an equal division, and hence the proceeds of sale should be distributed amongst the widow and children and the children of predeceased children, *per capita* and not *per stirpes.* In the case now under consideration the words are, if anything, stronger, for here the provision is that the proceeds shall be *equally* divided, *share and share alike.* It is difficult to conceive what language the testator could have used better adapted to prescribe the mode of distribution, and we do not feel justified in substituting, for the declared will of the testator, a mode of distribution by which one of his heirs—grandchild—should receive only a fractional part of an equal share, when the testator has ex-

pressly directed that each of his heirs shall receive an equal share, and that all shall share alike. The case of *Collier* v. *Collier*, 3 *Rich. Eq.* 555, does not, in our opinion, conflict with these views. There the testator, after giving various bequests to his wife and children by their names, and to his grandchildren by classes, designating them as children of a deceased child, viz.: "To my son John's children," and "to my son William's children," as well as a bequest to his grandson Oliver, who was one of John's children, directed that the residue of his estate "be equally divided amongst all my above-named heirs," and it was held that the residue must be divided *per stirpes* and not *per capita*, notwithstanding the word "equally." But this conclusion was reached by the court only because, as they say, "it seems to us that upon the whole will, and particularly by the manner and the amount of the several primary gifts to his son John's children, to his son William's children, to his daughter Margaret, his daughter Sophia and to his other children, and by the phrase 'above-named heirs,' the testator signified his purpose that his 'son John's children' shall be one of his heirs, his 'son William's children' shall be one of his heirs, and each of his own children one of his heirs; and that the words of equality are satisfied by equal distribution amongst those of the same degree, according to the statute. The testator's grandson, Oliver, is represented to be a son of John, and will it be urged that testator intended Oliver to take two full equal shares?" Here there are no such considerations to control the signification of the words "equally" and "share and share alike," and we must, therefore, give them their usual signification.

The judgment of the Circuit Court, except as modified herein, is affirmed, and the case is remanded to that court for such further proceedings as may be necessary.

WILLARD, C. J., concurred.